# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SIMON ANTONIO STARKS,

        Defendant-Appellant.

UNPUBLISHED
September 22, 2015

No. 321354
Berrien Circuit Court
LC No. 2013-005084-FC

Before: BOONSTRA, P.J., and MURPHY and MARKEY, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of armed robbery, MCL 750.529, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to 11 to 20 years' imprisonment for the armed robbery conviction and two years' imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm.

This case arises out of an armed robbery of a married couple after they arrived at a church parking lot as part of a prearranged meeting to inspect and possibly purchase a used motor vehicle that had been advertised for sale on Craigslist. In an apparent setup, the couple were robbed by two individuals brandishing handguns, one of whom was later identified by both victims as defendant; a third suspect stood nearby, ostensibly acting as a lookout. Defendant and his gun-toting accomplice pointed their firearms at the victims and threatened to shoot them if they failed to comply. The perpetrators fled with the husband's wallet, and defendant was apprehended several weeks later. Defendant presented an alibi defense at trial, relying on his own testimony and the testimony of a girlfriend with whom defendant claimed to have been at the time of the robbery. The issue of identity was the focus of the trial. The jury rejected defendant's alibi defense, found the couple's account credible, and rendered a verdict of guilty on the armed robbery and felony-firearm offenses.

Defendant first argues that there was insufficient "credible" evidence to support his convictions. Defendant complains that there was no confession or inculpatory scientific evidence, that there were discrepancies in the victims' testimony, that the victims were strangers to defendant, that the events were sudden and startling and took place at night, that it was a cross-racial identification, that the perpetrators wore bandanas as partial masks, and that there was sound evidentiary support for defendant's alibi, all of which evidence pointed to a misidentification of defendant as one of the robbers.

-1-

We review de novo the issue regarding whether there was sufficient evidence to sustain a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

To establish the crime of armed robbery under MCL 750.529, the prosecution must prove beyond a reasonable doubt that the defendant, in the course of committing a larceny of money or property, used force or violence against, assaulted, or placed in fear the complainant, while possessing a dangerous weapon, possessing an article used or fashioned in a manner to give the appearance of being a dangerous weapon, or representing that he or she possessed a dangerous weapon. *People v Chambers*, 277 Mich App 1, 7-8; 742 NW2d 610 (2007); M Crim JI 18.1. Further, "it is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). A witness's positive identification may establish sufficient evidence of identity. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). With respect to the armed robbery, defendant does not challenge whether there was sufficient evidence to show that an armed robbery occurred; rather, defendant only argues that there was insufficient evidence showing that he was one of the perpetrators. Defendant's identity argument is equally applicable to the felony-firearm conviction.

Here, both victims identified defendant as one of the individuals who committed the armed robbery. The husband testified that he was "100 percent positive" that defendant was the person who took his wallet. The wife testified that she had "no doubt" about her identification of defendant. Further, although defendant wore a bandana that covered part of his face, the wife asserted that she was able to see defendant from the nose up. She claimed that she was able to identify defendant on the basis of his hair, the shape of his eyes, and his nose. The couple both testified that defendant wielded a gun. Viewing the evidence in a light most favorable to the prosecution, resolving all conflicts in the evidence in favor of the prosecution, and deferring to the jury's assessment of the weight of the evidence and the credibility of the witnesses, we conclude that a rational juror could find that the prosecution proved beyond a reasonable doubt that defendant committed the offenses of armed robbery and felony-firearm. All of defendant's arguments on appeal are ultimately predicated on the weight of the evidence, conflicts in the evidence, and/or the credibility of witnesses, none of which warrant reversal. *Wolfe*, 440 Mich at 514-515; *Kanaan*, 278 Mich App at 619. The testimony against defendant did not contradict or defy physical facts and realities or laws of science, nor was the testimony patently incredible or

inherently implausible. See *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998) (addressing a great-weight-of-the-evidence argument). Reversal is unwarranted.

With respect to the conviction for felony-firearm, defendant additionally argues that, despite the couple's belief that the object in defendant's hand was an actual firearm, there was insufficient evidence to establish that the object held by defendant was indeed a "firearm" as defined in MCL 8.3t. We first note that the applicable definition of "firearm" for purposes of MCL 750.227b (felony-firearm) is found in MCL 750.222, not MCL 8.3t, although the definitions are quite similar. *People v Peals*, 476 Mich 636, 640; 720 NW2d 196 (2006). On the date of the robbery, MCL 750.222(d) provided as follows:

> "Firearm" means a weapon from which a dangerous projectile may be propelled by an explosive, or by gas or air. Firearm does not include a smooth bore rifle or handgun designed and manufactured exclusively for propelling by a spring, or by gas or air, BBs not exceeding .177 caliber.[1]

"[T]here is no operability requirement for the offense[] of felony-firearm." *Peals*, 476 Mich at 656. Further, "[w]here conviction of an offense requires proof beyond a reasonable doubt that a defendant possessed a firearm, this element may be proven without the actual admission into evidence of the weapon." *People v Hayden*, 132 Mich App 273, 296; 348 NW2d 672 (1984) (indicating that a defendant may be convicted of felony-firearm when a victim testified to observing a gun, although the gun was never recovered). In *People v Davis*, 216 Mich App 47, 53; 549 NW2d 1 (1996), this Court held that the evidence was sufficient to support the defendant's felony-firearm conviction when the victim "testified that defendant pointed a pistol at him, warned him not to come any closer or he would kill him, and pulled the trigger several times (but no bullets fired)." Here, both victims testified that defendant possessed a black gun, and they described the firearm. Moreover, the couple testified that defendant pointed his gun at the husband, accompanied by repeated threats that he would be shot if he did not comply. And the wife was also threatened with being shot by defendant's accomplice. The perpetrators certainly conducted themselves as if they possessed deadly force in the form of firearms. Under the caselaw, this evidence was sufficient to support the jury's conclusion that the object possessed by defendant was a "firearm" for purposes of MCL 750.227b.

Next, defendant alleges multiple instances of prosecutorial misconduct or error that were not preserved below. Our review, therefore, is for plain error affecting defendant's substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004). Generally speaking, "the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007).

Despite defendant's argument to the contrary, we first hold that the prosecutor did not improperly appeal to the jury for sympathy by simply reading or playing a portion of the wife's

---

[1] MCL 750.222 was recently amended by the Legislature, and now the term "firearm" is simply defined as "any weapon which will, is designed to, or may readily be converted to expel a projectile by action of an explosive." MCL 750.222(e); 2015 PA 26, effective July 1, 2015.

-3-

911 call at the beginning of the prosecutor's opening statement, followed by a recitation of the facts that the prosecutor intended to prove based on the anticipated evidence. *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008). Said portion of the 911 call primarily explained the events that had just unfolded, as ultimately testified to by the victims. In fact, a CD of the 911 call was later admitted into evidence and played without objection. Thus, any assumed misconduct or error in the prosecutor's opening statement was harmless and did not affect defendant's substantial rights. There was no error and no prejudice.

Next, defendant alleges several instances in which the prosecutor argued facts not in evidence. During closing arguments, a prosecutor is entitled to present arguments on the basis of the evidence and any reasonable inferences arising from the evidence. *People v Comella*, 296 Mich App 643, 654; 823 NW2d 138 (2012). We have carefully reviewed each of the prosecutor's remarks cited by defendant and conclude that they were either directly based on the evidence admitted during the trial or based on reasonable inferences arising from the evidence. Reversal is unwarranted.

Defendant additionally claims that the prosecutor misstated the law, improperly shifting the burden of proof and inaccurately stating the concept of reasonable doubt. In rebuttal argument, the prosecutor asked the jury whether it sufficiently believed the alibi testified to by defendant and his girlfriend, such that it was prepared to believe that the victims were lying. "A prosecutor's clear misstatement of the law that remains uncorrected may deprive a defendant of a fair trial." *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). The prosecutor's comment had nothing to do with reasonable doubt or the burden of proof, nor was it even a direct or indirect statement of the law; rather, it was merely part of an argument regarding the credibility of the witnesses. A prosecutor is permitted to argue from the facts that a witness is credible or not credible. *Thomas*, 260 Mich App at 455; *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005). Moreover, the jury was instructed that defendant was presumed innocent until proven guilty by the prosecution beyond a reasonable doubt, and the trial court properly instructed the jurors on the principle of reasonable doubt. "Jurors are presumed to follow the instructions of the court." *People v Meissner*, 294 Mich App 438, 457; 812 NW2d 37 (2011). There was no prosecutorial misconduct or error, nor were defendant's substantial rights affected.

Next, defendant argues that the prosecutor repeatedly expressed her personal belief in the facts of the case. However, we conclude that the prosecutor did not interject any personal beliefs, but instead permissibly argued the evidence, reasonable inferences arising from the evidence, and her theory of the case as based on the evidence and reasonable inferences. *Comella*, 296 Mich App at 654; *People v Ackerman*, 257 Mich App 434, 452; 669 NW2d 818 (2003).

Defendant also argues that the prosecutor denigrated defendant and the defense theory in several ways. A prosecutor "must refrain from denigrating a defendant with intemperate and prejudicial remarks." *People v Bahoda*, 448 Mich 261, 283; 531 NW2d 659 (1995). Here, we have reviewed the alleged instances of denigration and find that the prosecutor was permissibly attacking the defense's alibi theory based on the evidence and reasonable inferences arising therefrom. *Comella*, 296 Mich App at 654; see also *Meissner*, 294 Mich App at 456 (explaining that "[p]rosecutors have discretion on how to argue the facts and reasonable inferences arising

therefrom, and are not limited to presenting their arguments in the blandest terms possible"). Further, the jury was instructed that arguments by counsel were not evidence, and, once again, "[j]urors are presumed to follow the instructions of the court." *Meissner*, 294 Mich App at 457.

Defendant next argues that the cumulative effect of the alleged errors denied defendant a fair trial. Here, as gleaned from above, there were no errors and thus reversal is unwarranted. *People v Mayhew*, 236 Mich App 112, 128; 600 NW2d 370 (1999) ("Because no errors were found with regard to any of the above issues, a cumulative effect of errors is incapable of being found."). Moreover, curative instructions could have alleviated any prejudicial effect flowing from any one of the alleged errors, thereby precluding reversal. *People v Bennett*, 290 Mich App 465, 476; 802 NW2d 627 (2010). In sum, there is no basis to reverse on the claims of prosecutorial misconduct or error.

Lastly, defendant argues that defense counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct or errors discussed above and for failing to call an expert witness to testify about the unreliability of eyewitness identifications. Whether a defendant received the effective assistance of counsel is a mixed question of fact and law that we review, respectively, for clear error and de novo. *People v Ackley*, __ Mich __, __; __ NW2d __ (2015); slip op at 6. "To obtain relief for the denial of the effective assistance of counsel, the defendant must show that counsel's performance fell short of . . . [an] objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome . . . would have been different." *Id.* at __; slip op at 7 (quotation marks omitted). A defendant must overcome the strong presumption that counsel's performance constituted sound trial strategy, but an appellate court is not permitted to insulate the review of counsel's performance by simply calling it trial strategy – the strategy must be sound, with decisions being objectively reasonable. *Id.* We must determine whether strategic choices were made after less than complete investigation or if a reasonable decision made an investigation unnecessary. *Id.*

With respect to the failure to object relative to the alleged instances of prosecutorial misconduct or error, because the prosecutor's challenged comments and remarks were proper, defense counsel was not ineffective, as counsel need not raise futile or meritless objections. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). And defendant has not established a reasonable probability of a different outcome, i.e., the requisite prejudice, assuming deficient performance.

In regard to the failure to call an expert witness relative to eyewitness identifications, defense counsel thoroughly cross-examined the victims on the subject of identifying defendant as one of the perpetrators, resulting in some discrepancies and weaknesses in the victims' testimony that were used by counsel as fodder for arguing misidentification. In *People v Cooper*, 236 Mich App 643, 658; 601 NW2d 409 (1999), this Court rejected a similar argument, ruling:

> Defendant also argues that trial counsel provided ineffective assistance by failing to present expert psychological testimony about how the circumstances of the incident could have impaired McGinnis' perception, memory, and ability to recognize the shooter. Trial counsel's conduct in this regard is presumed to be a permissible exercise of trial strategy. Defendant has not overcome that

-5-

presumption. Throughout his cross-examination of McGinnis, trial counsel elicited apparent discrepancies and arguable bases for regarding McGinnis' identification of defendant as the shooter to be suspect. Trial counsel may reasonably have been concerned that the jury would react negatively to perhaps lengthy expert testimony that it may have regarded as only stating the obvious: memories and perceptions are sometimes inaccurate. [Citation omitted.]

As opposed to the situation in *Ackley*, where defense counsel failed to attempt to secure an expert despite the critical need to present expert medical testimony on causation involving the unexplained and unwitnessed death of a child, especially in light of the prosecution's reliance on expert testimony, an expert in the case at bar was not necessary and critical to presenting the theory of misidentification. Rather, it was reasonable and sound for defense counsel to rely on the discrepancies in the victims' testimony and the nature of the surrounding circumstances (strangers, nighttime, sudden and stressful situation) in developing the misidentification argument, absent calling an expert on problematic aspects of eyewitness identifications. The jury was certainly capable of grasping the possibility of a misidentification under the circumstances and in light of the testimony even without an expert. Also, given that our review is limited to mistakes apparent on the record, *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000), we cannot ascertain whether an expert, on cross-examination, may have provided testimony that somewhat damaged or diminished defendant's theory under the facts, or whether defense counsel explored this avenue and reasonably chose not to call an expert after consultation. We hold that defendant has not shown that counsel's performance fell below an objective standard of reasonableness in failing to call an expert, nor has defendant established the existence of a reasonable probability that calling an expert would have changed the outcome of the proceedings.[2]

Affirmed.

/s/ Mark T. Boonstra
/s/ William B. Murphy
/s/ Jane E. Markey

---

[2] In his prayer for relief, defendant requests that, if his convictions are not reversed or if he is not granted a new trial, this Court rescore the sentencing guidelines "in accordance with the arguments made above and that the case then be remanded to the trial court for imposition of a lesser and proportionate sentence in view of the rescored guidelines." This argument is not properly presented for our review, MCR 7.212(C)(5), we do not generally score the sentencing guidelines, and defendant has wholly failed to adequately brief and develop a sentencing argument, thereby waiving the issue, *People v Kammeraad*, 307 Mich App 98, 143; 858 NW2d 490 (2014).