PEOPLE v COMELLA

Docket No. 301458. Submitted February 7, 2012, at Grand Rapids.
Decided May 24, 2012, at 9:00 a.m. Leave to appeal denied, 493
Mich 905.

A jury in the Kent Circuit Court, Dennis B. Leiber, J., convicted
Agostino Comella, Jr., of first-degree felony murder, MCL
750.316(1)(b), for causing the fatal head injury of his wife, a
vulnerable adult, in violation of MCL 750.145n, which prohibits
vulnerable-adult abuse. Defendant appealed, arguing that the
prosecution was required to prove that he committed both first-
and second-degree vulnerable-adult abuse as predicate felonies to
establish felony murder.

The Court of Appeals *held*:

1. The requirements for convicting a defendant of felony
murder may be satisfied by proving the commission of either
first-degree vulnerable-adult abuse or second-degree vulnerable-
adult abuse. MCL 750.316(1)(b) defines felony murder as murder
committed in the perpetration of, or attempt to perpetrate, arson;
first-, second-, or third-degree criminal sexual conduct; first-
degree child abuse; a major controlled substance offense; robbery;
carjacking; breaking and entering of a dwelling; first- or second-
degree home invasion; larceny of any kind; extortion; kidnapping;
first- and second-degree vulnerable-adult abuse; torture; or aggra-
vated stalking. Although the Legislature used the conjunction
"and" rather than "or" when it amended the felony-murder
statute to include both degrees of vulnerable-adult abuse, there
was no obvious reason why the Legislature would require a
defendant to commit both first- and second-degree vulnerable-
adult abuse to be guilty of felony murder, and it would be the only
circumstance under which a defendant would have to commit two
predicate felonies to be guilty of felony murder. Further, reading
the statute as requiring both first- and second-degree vulnerable-
adult abuse would render that portion of the statute meaningless
because it is impossible to commit both crimes in the same act.
Under MCL 750.145n(1), first-degree vulnerable-adult abuse oc-
curs when the caregiver intentionally causes serious physical harm
or serious mental harm to a vulnerable adult, while under MCL
750.145n(2), second-degree vulnerable-adult abuse occurs when

the reckless act or reckless failure to act of the caregiver or other person with authority over the vulnerable adult causes the vulnerable adult serious physical harm or serious mental harm. To require the prosecution to prove both would be to require proof of an oxymoron, because one cannot act with both intent and recklessness. It is more likely that the Legislature inadvertently used the conjunctive word "and" while overlooking the fact that the other offenses listed in the statute were joined by the disjunctive word "or" than it is that the Legislature amended the statute to add a requirement that would be impossible to meet. Interpreting the statute using the latter conclusion would render MCL 750.316(1)(b) dubious and the addition of vulnerable-adult abuse to the list of underlying offenses surplusage and nugatory. Defendant's arguments involving the failure to prove first-degree vulnerable-adult abuse, including his argument concerning ineffective assistance of counsel for failure to request an instruction, are without merit because first-degree vulnerable-adult abuse was not, and need not have been, part of the prosecutor's theory of the case.

2. There was sufficient evidence to establish the element of malice. In a felony-murder case, malice is established by showing an intent to kill, an intent to cause great bodily harm, or that the defendant created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result. Testimony indicated that defendant was aware that the victim was in a weakened physical condition because of her various medical problems, and defendant admitted that he had hit and pushed the victim on multiple occasions. In light of the victim's medical condition, a reasonable trier of fact could have concluded that defendant knew that slamming the victim into a wall with sufficient force to cause her to fall to the floor and hit her head was likely to cause death or great bodily harm.

3. Defendant did not establish that his counsel was ineffective for failing to move to suppress statements made during a custodial interview before defendant had been read his rights under *Miranda v Arizona*, 384 US 436 (1966). To establish ineffective assistance of counsel on this ground, defendant must show that he would have prevailed on the issue. Because there were arguments both in favor of and against finding that the interview took place in a custodial environment, it was unclear whether defendant would have prevailed on the issue and his ineffective-assistance claim therefore failed. Further, counsel was not ineffective for failing to object to the prosecutor's comments that the victim had been beaten and that defendant was controlling be-

cause those statements were supported by the evidence or reasonable inferences drawn from it and counsel was not required to make a meritless objection.

Affirmed.

CRIMINAL LAW — FELONY MURDER — VULNERABLE-ADULT ABUSE.

The first-degree murder statute defines felony murder as including murder committed in the perpetration of first- and second-degree vulnerable-adult abuse; the prosecution need not prove that a defendant committed both first-degree vulnerable-adult abuse and second-degree vulnerable-adult abuse to support a conviction of felony murder on this basis (MCL 750.145n, 750.316[1][b]).

*Bill Schuette,* Attorney General, *John J. Bursch,* Solicitor General, *William A. Forsyth,* Prosecuting Attorney, *Timothy K. McMorrow,* Chief Appellate Attorney, and *Kimberly M. Manns,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Jacqueline J. McCann* and *Kathy Hoffman Murphy*) for defendant.

Before: SAWYER, P.J., and O'CONNELL and RONAYNE KRAUSE, JJ.

SAWYER, P.J. The central issue in this case is whether, under the felony-murder statute,[1] when the predicate felony is abuse of a vulnerable adult, the prosecution must prove that a defendant committed both first- and second-degree vulnerable-adult abuse.[2] We hold that the prosecution must only show either offense, not both.

Defendant's wife, Ella, died on October 11, 2009. On a number of occasions before her death she needed medical attention for a variety of injuries. On July 31, she was admitted to the Metropolitan Hospital inten-

---

[1] MCL 750.316(1)(b).

[2] MCL 750.145n.

sive care unit for a fractured hip, hemorrhagic shock, and acute renal failure. Defendant gave conflicting accounts of the cause of the victim's injuries. Their daughter, Mary, had observed bruises on the victim and alerted the hospital staff, indicating her concern that defendant may have abused the victim.

Thereafter, in September, Mary visited her parents and observed bruises on the victim. When she asked defendant about them, he became angry and assaulted her. Both Mary and their other daughter contacted Adult Protective Services (APS). A few days later, during a follow-up medical visit with Dr. Chandini Valeeswarah, Valeeswarah observed multiple bruises on the victim's body. Defendant explained that the victim had fallen recently. Valeeswarah did not believe that the injuries were consistent with defendant's account and directed his staff to contact APS. A referral to APS also was made by the rehabilitation center that treated the victim after her physical therapist observed suspicious bruises.

While the APS investigation was pending, paramedics were summoned to the Comellas' home on October 9 because the victim was injured and unconscious. The victim was taken to the hospital, where she was admitted for a subdural hematoma. The victim died on October 11. Following an autopsy, the medical examiner determined that the cause of death was blunt-force impact to the head and that the manner of death was homicide. Defendant was thereafter convicted of first-degree felony murder and sentenced to the mandatory term of life in prison without the possibility of parole. He now appeals, and we affirm.

On appeal, defendant raises a number of arguments to support his claims that there was insufficient evidence to support his conviction and that he received

ineffective assistance of counsel. We turn first to an argument that is present in both issues, namely, whether the prosecutor was obligated to prove both first- and second-degree vulnerable-adult abuse to establish the underlying felony for the felony-murder charge. The prosecutor had proceeded on the theory that the predicate felony was second-degree vulnerable-adult abuse. Defendant argues on appeal that the felony-murder statute requires proof that defendant committed both first- and second-degree vulnerable-adult abuse and, because the prosecutor did not prove that defendant committed first-degree vulnerable-adult abuse, there was insufficient evidence to support the felony-murder conviction. Similarly, defendant argues that trial counsel was ineffective for failing to object to the jury instructions that did not include an instruction that the prosecutor had to prove first-degree vulnerable-adult abuse. We disagree.

MCL 750.316(1)(b) defines first-degree felony murder as

> [m]urder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, carjacking, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, kidnapping, vulnerable adult abuse in the first and second degree under [MCL 750.145n], torture under [MCL 750.85], or aggravated stalking under [MCL 750.411i].

The basis for defendant's argument lies in the fact that, with the exception of the reference to vulnerable-adult abuse, the statute uses the disjunctive word "or." This is true both in regard to the list of crimes as a whole and the references to the other two crimes with multiple degrees that satisfy the felony-murder rule (i.e., criminal sexual conduct and home invasion). Yet when the Legislature

amended the statute to add first- and second-degree vulnerable-adult abuse, it chose to use the conjunctive word "and." Thus, defendant argues, the Legislature intended to require proof of both first- and second-degree vulnerable-adult abuse in order to support a conviction of felony murder on this ground.

Questions of statutory interpretation are reviewed de novo.[3] Guiding our review are the following principles:

> Our overriding goal for interpreting a statute is to determine and give effect to the Legislature's intent. The most reliable indicator of the Legislature's intent is the words in the statute. We interpret those words in light of their ordinary meaning and their context within the statute and read them harmoniously to give effect to the statute as a whole. Moreover, "every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory." If the statutory language is unambiguous, no further judicial construction is required or permitted because we presume the Legislature intended the meaning that it plainly expressed. [*People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011), quoting *AFSCME v Detroit*, 468 Mich 388, 399-400; 662 NW2d 695 (2003).]

In the context of this statute, we do not believe that the Legislature intended the literal meaning of the word "and" in the reference to vulnerable-adult abuse in the first and second degrees.

As this Court explained in *People v Humphreys*,[4] the inaccurate use of "and" and "or" has infected statutes, creating ambiguities that require judicial construction:

> The primary goal of statutory interpretation is to ascertain and give effect to the legislative intent. *Root v Ins Co*

---

[3] *People v Peltola*, 489 Mich 174, 178; 803 NW2d 140 (2011).

[4] *People v Humphreys*, 221 Mich App 443, 451-452; 561 NW2d 868 (1997).

*of North America*, 214 Mich App 106, 109; 542 NW2d 318 (1995). In this case, the use of the disjunctive "or" gives rise to an ambiguity in the statute because it can be read as meaning either "and" or "or." Accordingly, we must construe the word to give effect to the Legislature's intent. *Id.* The Court in *Root*, [214 Mich App] at 109, discussed the often double meaning of the word "or":

> "The popular use of 'or' and 'and' is so loose and so frequently inaccurate that it has infected statutory enactments. While they are not treated as interchangeable, and should be followed when their accurate reading does not render the sense dubious, their strict meaning is more readily departed from than that of other words, and one read in place of the other in deference to the meaning of the context."

Similarly, in *People v Gatski*,[5] this Court observed that the literal meanings of "and" and "or" "should be followed if they do not render the statute dubious, but one will be read in place of the other if necessary to put the meaning in proper context."

Reading the word "and" literally in the vulnerable-adult-abuse portion of the felony-murder statute would render it dubious. First, there is no obvious reason why the Legislature would require a defendant to commit both first- and second-degree vulnerable-adult abuse in order to be guilty of felony murder. It would be the only circumstance under which a defendant would have to commit two predicate felonies in order to be guilty of felony murder. Second, and more importantly, to read the statute as requiring both first- and second-degree vulnerable-adult abuse would render that portion of the statute meaningless because it is impossible to commit both in the same act.

First-degree vulnerable-adult abuse occurs when "the caregiver intentionally causes serious physical

---

[5] *People v Gatski*, 260 Mich App 360, 365-366; 677 NW2d 357 (2004).

harm or serious mental harm to a vulnerable adult."[6] By contrast, second-degree vulnerable-adult abuse occurs when "the reckless act or reckless failure to act of the caregiver or other person with authority over the vulnerable adult causes serious physical harm or serious mental harm to a vulnerable adult."[7] To require the prosecution to prove both would be to require proof of an oxymoron. One cannot act with both intent and recklessness. "Reckless" means "utterly unconcerned about consequences."[8] Thus, to prove first-degree vulnerable-adult abuse, the prosecution would have to show that a defendant intentionally caused serious physical harm. But this proof would contradict the requirement of second-degree vulnerable-adult abuse, which would require that a defendant be "utterly unconcerned about the consequences" of the attack. A defendant cannot be utterly unconcerned about whether or not the attack will result in serious harm while at the same time intending to cause serious harm.

It must also be remembered that vulnerable-adult abuse is a recent addition to the felony-murder statute, having been added by 2004 PA 58. It would seem more plausible that when the Legislature added these two offenses to the list of underlying felonies, it did so with the intent to add both first- and second-degree violations to the list, not to add a single requirement of an offense that violated both provisions of the vulnerable-adult-abuse statute, which represents an impossibility. That is, it is more likely that the Legislature in drafting the amendatory act inadvertently made use of the conjunctive word "and" while overlooking the fact that

---

[6] MCL 750.145n(1).

[7] MCL 750.145n(2).

[8] *Random House Webster's College Dictionary* (2000).

all the offenses listed in the statute were joined by the disjunctive word "or" than it is that the Legislature took the trouble to amend the statute to add a requirement that would be impossible to meet. To interpret the statute using the latter conclusion would render the statute dubious and the addition of vulnerable-adult abuse to the list of underlying offenses merely surplusage and nugatory.

For these reasons, we conclude that the requirements for felony murder are satisfied by committing either first-degree vulnerable-adult abuse *or* second-degree vulnerable-adult abuse. Accordingly, we conclude that defendant's arguments that there was insufficient evidence to prove first-degree vulnerable-adult abuse and that he was deprived of effective assistance of counsel by his counsel's failing to request an instruction that the prosecutor had to prove first-degree vulnerable-adult abuse is without merit because first-degree vulnerable-adult abuse was not, and need not have been, part of the prosecutor's theory of the case.

Defendant also argues that there was insufficient evidence on the element of malice. We disagree. We review a sufficiency issue by considering the evidence in the light most favorable to the prosecution and determining whether a rational trier of fact could find each element of the offense proved beyond a reasonable doubt.[9] In the case at bar, defendant challenges whether there was sufficient evidence of the *mens rea* requirement of malice. In a felony-murder case, malice is established by showing an intent to kill, an intent to cause great bodily harm, or that the defendant created a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the

---

[9] *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999).

probable result.[10] In this case, the prosecutor argued the third form of malice.

There was testimony that the victim was in a weakened physical condition because of her various medical problems and that defendant was aware of her condition. Furthermore, defendant admitted when interviewed by detectives that he had hit and pushed the victim on multiple occasions. He further admitted that on one occasion he might have hit her head on the kitchen countertop. On another occasion, according to defendant, he "could of kinda slam [sic] her into the wall." The wall was a bathroom tile wall and "she kinda like bounced off," falling to the floor and hitting her head on the floor. The medical examiner testified that the cause of death was blunt cranial cerebral trauma.

In light of the victim's medical condition, a reasonable trier of fact could conclude that defendant knew that slamming the victim into a tile wall with sufficient force to cause her to fall to the floor and hit her head was likely to cause death or great bodily harm. We are satisfied that there was sufficient evidence of malice to support defendant's conviction.

Defendant also raises additional claims of ineffective assistance of counsel. Specifically, he argues that counsel was ineffective for failing to move to suppress statements made during a custodial interview before defendant had been read his *Miranda*[11] rights and for failing to object to the prosecutor's improper closing argument.

In order to establish ineffective assistance of counsel for failure to move to suppress a custodial statement made before the *Miranda* warnings were given, the

---

[10] *Id.* at 758.

[11] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

defendant must show that he or she would have prevailed on the issue.[12] In *People v Mayes (After Remand)*, there was evidence that would have supported both a conclusion that the defendant reasonably believed that he was not free to leave and a conclusion that he was not under arrest.[13] In favor of finding a custodial environment was the fact that the defendant, a high school senior, had been summoned to the principal's office, where he was met by a police officer, frisked, and then interrogated. Although he was free to leave, that fact was never communicated to him.[14] In favor of finding that there was no custodial environment were the facts that he was never told that he was under arrest, he was allowed to leave after being questioned, and the questioning occurred in the principal's office rather than in a police car or police station.[15] This Court ultimately concluded that while it could reasonably have been argued that the defendant was under arrest but had not yet been read the *Miranda* warnings when he made the statement, it was not clear whether the defendant would have prevailed and, therefore, the Court was not convinced that the defendant had received ineffective assistance of counsel.[16]

Similarly, in the case at bar, there are arguments both in favor of finding a custodial environment and against it. In favor of finding a custodial environment, defendant argues that multiple officers were involved in the interview, that defendant stayed in the conference room where the interviews took place between the first

---

[12] *People v Mayes (After Remand)*, 202 Mich App 181, 191; 508 NW2d 161 (1993).

[13] *Id.* at 190-191.

[14] *Id.* at 190.

[15] *Id.* at 190-191.

[16] *Id.* at 191.

and second interviews (and had been told to do so), and that he had been searched for a weapon. The prosecution responds by observing that defendant was asked if he was willing to answer questions, was taken to a private room near his wife's hospital room for the interview, was not physically restrained, was never told that he was not free to leave, and was left alone between the interviews. The prosecution also observes that defendant's remaining in the conference room between interviews could be explained by the fact that he may have wished to avoid another confrontation with his daughter, knowing that another confrontation would result in hospital security's removing them from the hospital.

With these points in mind, we must reach the same conclusion that our colleagues did in *Mayes*, namely, that "we are not convinced that defense counsel was ineffective for failing to argue that defendant's confession should have been suppressed, because it is unclear whether defendant would have prevailed on the issue."[17]

Finally, defendant argues that counsel was ineffective for failing to object to improper comments by the prosecutor during closing argument. Specifically, defendant argues that various comments by the prosecutor that the victim had been beaten were not supported by the record, nor were numerous comments that defendant claims disparagingly described him as "a detail man" and as "controlling."

With respect to the comments regarding the victim's having been beaten, a prosecutor is entitled to argue the evidence and reasonable inferences from the evidence.[18]

---

[17] *Id.*

[18] *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

In this case, while defendant is correct that there was no testimony from anyone who actually observed the victim being beaten, the conclusion that she had been was certainly a reasonable inference from the record. There was significant evidence regarding the various bruises and other physical injuries suffered by the victim, there was defendant's own admission regarding his physical assaults on the victim, and there was the testimony that a neighbor heard a commotion in the Comellas' home and a female voice crying out in pain. Similarly, there was a variety of testimony during the trial that would support a description of defendant as a controlling individual. For example, he wanted to keep the victim at home after her earlier discharge from the hospital despite medical advice that she go to a long-term-care facility, he did not want others in the home to care for the victim, and he would "nitpick" the victim and become angry when household tasks were not performed to his satisfaction. Even portions of defendant's own testimony could fairly be described as attempting to control the prosecutor's line of questioning.

In short, there was an adequate basis for the prosecutor to make these arguments. Because there was no prosecutorial misconduct, there was no basis for defense counsel to object. And it is not ineffective assistance of counsel to fail to make a meritless objection.[19]

Affirmed.

O'CONNELL and RONAYNE KRAUSE, JJ., concurred with SAWYER, P.J.

---

[19] *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).