# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PARIS PIERRE BANKS,

Defendant-Appellant.

UNPUBLISHED
February 2, 2016

No. 323428
Cass Circuit Court
LC No. 14-010092-FH

Before: BECKERING, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Following a jury trial, defendant, Paris Pierre Banks, was convicted of conspiracy to commit second-degree home invasion, MCL 750.110a(3) and MCL 750.157a; attempted second-degree home invasion, MCL 750.110a(3) and MCL 750.92; and obstruction by disguise, MCL 750.217. He was sentenced as a second-offense habitual offender, MCL 769.10, to 2 to 22 years and 6 months' imprisonment for conspiracy to commit second-degree home invasion, two to seven years and six months' imprisonment for attempted second-degree home invasion, and to 129 days in jail for obstruction by disguise. The sentences are concurrent, and defendant received credit for 129 days already served. Defendant appeals as of right. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS

On April 9, 2014, Brian Brown returned to his home at approximately 11:30 a.m. At the time he left, only his two dogs were in the home. However, when he returned, he saw a red Mitsubishi SUV, which he did not recognize, backed up to his garage. Brown saw three unidentified men run from the back of his home and into the SUV. Brown asked the men what they were doing on his property. They replied that they were asking for directions to get to South Bend, Indiana. Shortly thereafter, the driver of the SUV quickly backed up and "sped around" Brown's vehicle, through the front yard, and down the road. Brown, who had already contacted police officers, got into his vehicle and began chasing the SUV. Police officers subsequently took over the chase, but eventually lost sight of the SUV.

Upon returning home, Brown noticed that it appeared someone had tried to access his home through a rear door to the garage, that the person or persons had damaged multiple doors, and that someone had kicked in the door to his laundry room, breaking the door jamb. Brown

-1-

observed that the door going from the home to the inside of the garage was open; he normally closed this door. Brown testified that the interior door going from the laundry room to the kitchen was shut; he normally left this door open to allow his dogs access to the laundry room, where their food was kept. It did not appear that anything had been stolen.

Although the police officers who chased the red SUV eventually lost sight of it, one of the officers continued to search the area and discovered a red Mitsubishi SUV parked in a secluded driveway. Upon further inspection of the area, an officer discovered three men walking through a nearby field. Police officers apprehended the men; two of the men identified themselves, and defendant provided a false name to the officers. The officers separated the men and asked them what they were doing in the field. According to trial testimony, the "common thread" of the men's statements was that they had taken part in a drug deal gone awry, and they ran away after being threatened with guns. They denied any connection to the red SUV that was found nearby. Upon further questioning, defendant admitted that he had been traveling from Indiana with the other two men—Robert and Deon Goodwin—but he knew nothing about the red SUV.

In a search of the nearby area, police officers found, among other items, a red hat. Officers contacted Indiana resident Gail Hoefle, the owner of the SUV, who consented to a search of the vehicle. Inside the SUV, officers found a cellular telephone with a picture of Deon wearing what appeared to be the same red had that the officers recovered. Officers also found a debit card bearing Deon's name in the center console of the vehicle. Hoefle testified that she allowed her granddaughter, Arissa Lee, to borrow the vehicle, but did not allow Deon to use it. Lee, who was dating Deon, allowed Deon to drive the vehicle on April 9, 2014, because he told her that he had a job interview. She did not give Deon permission to take the vehicle to Michigan.

Based on this circumstantial evidence, the jury convicted defendant of conspiracy to commit second-degree home invasion, attempted second-degree home invasion, and obstruction by disguise. He now appeals as of right.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to convict him of conspiracy to commit second-degree home invasion and attempted second-degree home invasion. When a defendant challenges the sufficiency of the evidence, we review the convictions de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). The analysis is "whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt." *Id*. at 175. In making this determination, we view "the evidence in the light most favorable to the prosecution." *Id*. Further, we will "not interfere with the jury's assessment of the weight and credibility of witnesses or the evidence, and the elements of an offense may be established on the basis of circumstantial evidence and reasonable inferences from the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013) (internal citation omitted).

"Second-degree home invasion requires proof that [1] the defendant entered a dwelling by breaking or without the permission of any person in ownership or lawful possession or control

of the dwelling and [2] did so with the intent to commit a felony, larceny, or assault therein or committed a felony, larceny, or assault while entering, present in, or exiting the dwelling. *Id*. Further, "it is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). With respect to defendant's attempt conviction, "an 'attempt' consists of (1) an attempt to commit an offense prohibited by law, and (2) any act towards the commission of the intended offense." *People v Thousand*, 465 Mich 149, 164; 631 NW2d 694 (2001). A defendant must have the specific intent to commit the underlying offense. *Id*. at 164 n 15. In addition, an "act" "consists of some direct movement toward commission of the crime that would lead immediately to the completion of the crime." *People v Jones*, 443 Mich 88, 100; 504 NW2d 158 (1993).

Here, Brown saw a red Mitsubishi SUV backed up to his garage when he returned home. He then saw three young men run around from the back of his house and get into the SUV, which fled the scene—by way of traversing his lawn to foil his detention efforts—at a high rate of speed. Brown pursued the vehicle until police took over the chase. Officers lost contact with the vehicle but, shortly thereafter, found a red Mitsubishi SUV abandoned in a secluded driveway in a nearby area. A reasonable inference arises that the red Mitsubishi SUV, which fled from the house at a high rate of speed, was the same red Mitsubishi SUV that police later found abandoned. Defendant, Robert, and Deon were found within close proximity of the abandoned red Mitsubishi SUV, and Deon's debit card and a cellular telephone with a picture of him on it were found inside the vehicle. Further, there was testimony that the vehicle had been lent to Deon. Defendant admitted coming to Michigan with Robert and Deon, who were all found by police together near the abandoned vehicle. Thus, defendant's statements and the evidence linking Deon to the vehicle connected defendant to the red Mitsubishi SUV. Viewing this evidence in a light most favorable to the prosecution, defendant's identity as one of the three individuals who came running out from behind the victim's house was proven beyond a reasonable doubt. *Dunigan*, 299 Mich App at 582.

With respect to attempted second-degree home invasion, there was evidence that defendant, Robert, and Deon, damaged doors and broke the doorjamb to the laundry room door of Brown's house. This evidence demonstrates an attempt to enter a dwelling by breaking, and constitutes direct movement toward the commission of home invasion. *Thousand*, 465 Mich at 164; *Jones*, 443 Mich at 100. With respect to intent, as discussed *infra*, the evidence also permits a reasonable inference that the three individuals intended to commit a larceny, given that they were at an unoccupied house on a large lot with their vehicle backed up to the garage. Further, when defendant was found in the field, he gave a fictitious name to the police. This deception and Robert, Deon, and defendant's flight from the scene when the homeowner returned provide for inferences of consciousness guilt. See *People v Smelley*, 485 Mich 1023; 776 NW2d 310 (2010); *People v Unger*, 278 Mich App 210, 227; 749 NW2d 272 (2008). Viewed in a light most favorable to the prosecution, the evidence of defendant's consciousness of guilt coupled with the facts and circumstances provided sufficient evidence for a jury to find defendant guilty of attempted second-degree home invasion. *Harverson*, 291 Mich App 175.

With respect to conspiracy, "[a] criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). In order to establish the requisite intent for a conspiracy, "there must be proof showing that the parties

specifically intended to further, promote, advance, or pursue an unlawful objective." *Id*. (quotation marks and citation omitted). However, "[d]irect proof of a conspiracy is not required; rather, proof may be derived from the circumstances, acts, and conduct of the parties." *Id*. (quotation marks and citation omitted).

Here, the evidence indicates that Robert, Deon, and defendant acted in concert during the attempted home invasion. Brown came home to find the three individuals running out from behind his house, and he later discovered that there was damage to several entryways into his home and that a door in the back of the house was forcibly opened. The damage to the doors permits a reasonable inference that the group specifically intended to enter the dwelling by breaking. Next, although defendant and his cohorts stated that they needed directions, they were behind the house when Brown arrived home and their vehicle was backed up to the garage. The attempted home invasion occurred on a Wednesday morning—a time where many people are presumably at work or school. The house was off the road and on a wooded lot, and there were no other cars in the driveway. These facts support an inference that the attempted entry was committed with an intent to commit larceny. Further, the facts and circumstances permit a reasonable inference that the group was acting together in agreement to effectuate the home invasion: the individuals traveled together to Michigan from Indiana; the red Mitsubishi SUV they were riding in was backed up to the garage, which is circumstantial evidence that the three individuals planned for loading as well as a quick getaway; the chosen house was off the road and on a wooded lot with no cars in the driveway, which is further circumstantial evidence that Robert, Deon, and defendant picked a secluded target; they had already begun breaking into the home; and all three individuals got into the red Mitsubishi SUV together and sped off through the lawn. Under these circumstances, a reasonable jury could infer that defendant and the other parties specifically intended to commit a larceny within the home—meeting the intent element of second-degree home invasion. See *id.* In sum, the circumstances and conduct of the parties, viewed in a light most favorable to the prosecution, permit a reasonable inference that defendant, Robert, and Deon knew of and "voluntarily agree[d] to effectuate the commission of" second-degree home invasion. See *id*. Therefore, there was sufficient evidence to convict defendant of conspiracy to commit second-degree home invasion. *Harverson*, 291 Mich App 175.

While we find there was sufficient evidence to support defendant's conspiracy and attempt convictions, we note that, although not raised by defendant, there was insufficient evidence for his obstruction by disguise conviction. MCL 750.217 states that:

> Any person who in any manner disguises himself or herself with intent to obstruct the due execution of the law, or with intent to intimidate, hinder or interrupt any officer or any other person in the legal performance of his or her duty, or the exercise of his or her rights under the constitution and laws of this state, whether such intent be effected or not, is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $1,000.00.

Interpreting this statute, this Court has held that the word "disguise" as used in the statute refers to "a defendant's *physical disguise of his person . . . .*" *People v Jackson*, 262 Mich App 669, 670; 686 NW2d 810 (2004) (emphasis added). Giving a false name to police officers is not prohibited by the statute. *Id.* at 675. Here, the prosecution improperly urged the jury to convict defendant of obstruction by disguise based on his act of supplying a false name, and we find no

evidence to support this conviction. As such, we find that the conviction is improper, and remand with instructions for the trial court to vacate defendant's conviction and sentence on this charge.

## III. PROSECUTORIAL MISCONDUCT

Next, defendant argues that prosecutorial misconduct denied him a fair trial. Because his claims of prosecutorial misconduct are unpreserved, our review is for plain error that affected defendant's substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004). Under this standard, defendant bears the burden of showing: "1) error . . . occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights," "i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). If these elements are established, this Court exercises its discretion in determining whether reversal is warranted. *Id*. "Prosecutors . . . have a duty to see that defendants receive a fair trial while attempting to convict those guilty of crimes." *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). However, "prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999).

Defendant first argues that the prosecutor deliberately elicited irrelevant and prejudicial evidence that one of the Goodwin brothers changed his story regarding what happened and that Deon did not have permission to take the borrowed vehicle to Edwardsburg. Initially, we note that defendant has not demonstrated that the prosecutor's attempt to elicit the information was done in bad faith. See *id*. Further, the challenged testimony was relevant to rebutting defendant's explanation of why he was in Edwardsburg, Michigan, establishing the parties' identities, their connection to the SUV, and the existence of a plan. With respect to the testimony related to Deon's permission to borrow the vehicle, this testimony provided context for the disputed events and was part of the complete story. See *People v Aldrich*, 246 Mich App 101, 115; 631 NW2d 67 (2001) ("[A] jury is entitled to hear the 'complete story' of the matter in issue."). Next, there was no indication that this evidence was given undue or preemptive weight. See *People v Mardlin*, 487 Mich 609, 627; 790 NW2d 607 (2010), citing MRE 403. With respect to defendant's hearsay and Confrontation Clause arguments within this issue, we note that the contents of the changed statement were not disclosed to the jury. Further, the fact that two statements are inconsistent is not an assertion. Thus, this testimony was not hearsay, MRE 801(a); MRE 801(c), and the Confrontation Clause is not implicated, *People v Chambers*, 277 Mich App 1, 10-11; 742 NW2d 610 (2007). Defendant has not shown plain error. *Carines*, 460 Mich at 763.

Next, defendant argues that the prosecutor argued facts not in evidence by stating that the interior doors of Brown's home were open and shut in combinations that he did not leave them. "Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). Brown testified that he found the interior door going from the home to the garage open and the interior door going from the hallway/kitchen area to the laundry room closed. He further testified that the interior door to the garage was closed when he left and that the interior door to the laundry room was left open. Therefore, the prosecutor argued facts that were in evidence, and defendant's argument is simply without merit.

-5-

Further, contrary to defendant's argument, this testimony was not inadmissible under MRE 403. This evidence was highly probative to whether entry was made.

Next, defendant argues that the prosecutor improperly expressed his personal beliefs by stating the case had strong circumstantial evidence. With respect to a prosecutor's statements, "[t]he crucial inquiry is not whether the prosecutor said 'We know' or 'I know' or 'I believe,' but rather whether the prosecutor was attempting to vouch for the defendant's guilt." *People v Reed*, 449 Mich 375, 399; 535 NW2d 496 (1995). Further, in an opening statement, a prosecutor may state facts that he intends to prove at trial. *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). Viewing the challenged statement in context, the prosecutor was not personally vouching for defendant's guilt; rather, the prosecutor told jury that he intended to prove his case based on the strength of the circumstantial evidence presented. The prosecutor argued the evidence that he intended to use and his theory of the case, which was that strong circumstantial evidence proved defendant's guilt beyond a reasonable doubt.

Next, defendant argues that the prosecutor improperly elicited opinion testimony from two police officers. Initially, he contends that the following testimony from Albert Strukel of the Cass County Sheriff's Office was improper opinion testimony: (1) Strukel's testimony that the red hat found in the field was the red hat in the photo on the cellular telephone; and (2) Strukel's testimony that the individual in the photo on the cellular telephone was Deon. Lay opinion testimony is governed by MRE 701, which provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Here, Strukel testified that he recognized the person in the photo on the screensaver of the cellular telephone as Deon and that Deon was wearing the hat that was found in the field. Strukel observed Deon earlier that day and found the hat, which makes his identifications of the hat and Deon rationally based on his own perception. Moreover, the identification was helpful to a determination of a fact in issue, which was an identification of who was in the red Mitsubishi SUV. The photo, which contained Deon and the hat, connected Deon to the vehicle, which in turn connected the other individuals to the vehicle. Therefore, Strukel's testimony identifying the hat and Deon in the photo was proper lay opinion testimony. MRE 701. Defendant has not demonstrated plain error in this respect. *Carines*, 460 Mich at 763.

Next, defendant argues that the prosecutor improperly elicited opinion testimony from Strukel, as well as from Detective Kristin Daly, who both testified about the inconsistent statements—discussed above—given by one of the Goodwin brothers. According to defendant, the testimony about the statements being inconsistent was improper opinion testimony. We find that this testimony fit within the parameters of MRE 701 because it was based on perceptions and was helpful to the determination of a fact at issue. Further, even to the extent that the testimony was improper, defendant has not demonstrated that the prosecutor acted in bad faith, *Noble*, 238 Mich App at 660, or that the testimony had any effect on the outcome of the trial, *Carines*, 460 Mich at 763.

-6-

Lastly, with regard to prosecutorial misconduct, because we find no merit to any of defendant's alleged errors, we find that defendant's claim of cumulative error argument is without merit.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that defense counsel was ineffective for failing to object to the prosecutorial misconduct arguments above. Defense counsel was not ineffective for failing to make meritless objections. *People v Comella*, 296 Mich App 643, 655; 823 NW2d 138 (2012).

Affirmed in part, reversed in part, and remanded for the purpose of vacating defendant's conviction and sentence pertaining to the offense of obstruction by disguise. We do not retain jurisdiction.

/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly