# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TERRY BOSTIC HENRY,

Defendant-Appellant.

UNPUBLISHED
November 3, 2016

No. 327414
Wayne Circuit Court
LC No. 14-009324-01-FH

Before: GADOLA, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of possession of a firearm by a person convicted of a felony (felon in possession of a firearm), MCL 750.224f, carrying a concealed weapon (CCW), MCL 750.227, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and possession of ammunition by a person convicted of a felony (felon in possession of ammunition), MCL 750.224f(6). The trial court sentenced defendant to 3 years' probation for the felon in possession of a firearm, CCW, and felon in possession of ammunition convictions, and to two years' imprisonment for the felony-firearm conviction. We affirm.

This case arises from defendant's possession of a firearm and ammunition on October 11, 2014, in the city of Detroit. On that day, at approximately 8:30 p.m., Detroit Police Officers Alen Ibrahimovic, Samuel Pionessa, and Lonnie Peugh were patrolling in a semi-marked police car the area of Northlawn and Intervale streets, a residential neighborhood that Pionessa testified is known for heavy narcotics traffic. Peugh testified that it was daylight at the time of the events, while Pionessa and Ibrahimovic described it as "dusk."

According to the officers' testimony, the officers saw defendant walking down the center of Northlawn Street, accompanied by DeAndre Calvin. The officers testified that walking in the street, given that a sidewalk is provided, is in violation of the law. The officers got out of the police car and directed defendant and Calvin to stop. Calvin stopped, while defendant kept walking. Peugh testified that he then ordered defendant to come to the front of the police car. Instead, defendant grabbed the right side of the waistband of his pants with his right hand and ran. Peugh testified that in his experience defendant's actions of clutching his waistband and running indicated that defendant was concealing a weapon. Peugh again ordered defendant to stop, then chased defendant into a vacant house where he detained defendant.

-1-

Peugh testified that he conducted a pat-down search of defendant and found a nine-millimeter Ruger handgun in the waistband of defendant's pants; the gun had five rounds of ammunition in it with four rounds being in the magazine and one round in the chamber. Peugh testified that he asked defendant if he had a permit to carry the weapon concealed and defendant said that he did not. At that point Pionessa entered the vacant house and saw that defendant had been detained by Peugh. Pionessa testified that when he saw the gun, he asked defendant if he had a permit to carry a concealed weapon and defendant responded that he did not. The officers thereafter advised defendant of his rights and arrested him.

Meanwhile, Ibrahimovic, who had been driving the police car, had detained and questioned Calvin near the police car. Ibrahimovic testified that after defendant was arrested and brought out to the police car, the officers released Calvin.

Calvin testified that the events occurred differently. Calvin testified that he remembered the encounter with the police officers, but was not sure of the date that it occurred. According to Calvin, on the day of the encounter, he and defendant were walking on Northlawn Street in the city of Detroit, but were walking on the sidewalk and that the time was between 5:00 p.m. and 5:45 p.m. Calvin testified that he and defendant were aware of the police car in which the three officers were riding. Calvin testified that he was particularly aware of the presence of the police because there was an outstanding felony warrant for his arrest at that time.

Calvin testified that as he and defendant were walking he stopped to talk to some acquaintances in front of a house on Northlawn Street, but defendant kept walking. Calvin testified that one of the police officers from the police car then began chasing on foot a person who had been in front of the house where Calvin had stopped. Calvin testified that the person being chased was someone he knows only as "Sleepy." The officer caught up with "Sleepy" at the porch door, spoke with "Sleepy," then walked away out of Calvin's range of vision. Meanwhile, the other two officers conducted a pat-down search of Calvin by the police car, and then released him. Calvin testified that he then saw the officer who had chased "Sleepy" walking around the side of a vacant house four houses away. Calvin referred to this vacant house as their "clubhouse." Calvin testified that although the "clubhouse" was vacant, there was electrical service to the house and he and certain friends used the house as a meeting place.

Calvin testified that after the police officers released him, he entered the "clubhouse" and bolted the door behind him. He then went upstairs where defendant and defendant's brother, Terry Douglas, whom Calvin had earlier sent to buy beer, had already gathered. Calvin testified that he then heard the police officers kicking the door downstairs. Douglas went down the stairs; the officers had entered the house and ordered him to "freeze." In response to the police, Calvin, Douglas, and defendant all came downstairs and were each handcuffed.

Calvin testified that the police then questioned them together and separately for about 45 minutes to an hour, demanding to know where the gun was.[1] Calvin testified that he, defendant,

---

[1] It is undisputed that the officers found a shotgun in the "clubhouse." Defendant was not charged with possession of the shotgun, however, and that gun is not at issue in this appeal.

and Douglas all insisted that there was no gun. According to Calvin, at this point the police officers stated that they were going to call a K-9 unit. After about 45 minutes to an hour, another officer arrived with a K-9 badge and a dog, and appeared to search the upstairs of the house and the yard outside for about 30 to 45 minutes. Calvin estimated that he, defendant, and Douglas were detained by the officers for a total of about two to two-and-a-half hours during this questioning and searching. Calvin testified that the police then took him outside and again asked him where the gun was, and that he again told the officers that there was no gun. According to Calvin, he ultimately told the officers where they could locate some illegal marijuana at a nearby drug house and that in exchange for that information the officers released him.

At the conclusion of the testimony and arguments, the trial court found defendant guilty of being a felon in possession of a firearm and of ammunition, MCL 750.224f, carrying a concealed weapon, MCL 750.227, and of felony-firearm, MCL 750.227b. The trial court found that defendant had been in possession of the Ruger and the ammunition. The trial court specifically noted that it was giving some credibility to the testimony of the defense witness that a K-9 unit may have been called, but that the evidence presented no other explanation for the presence of the gun other than that provided by the testimony of the officers that the gun had been in defendant's possession.

Defendant claimed an appeal to this Court challenging the finding of the trial court. Thereafter, defendant filed a motion before this Court seeking permission to file a supplemental brief raising additional issues. Defendant also filed a motion for remand to the trial court for the purpose of seeking a new trial on the basis of newly discovered evidence, being the K-9 unit's activity records. This Court granted defendant's motion to file a supplemental brief and denied the motion for remand, but permitted the documents appended to the motion for remand to be added to the record on appeal.

## I. IMPROPER SHIFTING OF THE BURDEN OF PROOF

Defendant first contends that the trial court erroneously shifted the burden of proof to him because the trial court expected defendant to provide an explanation for the presence of the firearm introduced at trial. We disagree.

In a bench trial, a trial court must specifically find facts, state its conclusions of law separately, and state its findings and conclusions either on the record or in a written opinion. MCR 6.403. We review a trial court's findings of fact for clear error and a trial court's application of law de novo. MCR 2.613(C); *People v Lanzo Constr Co*, 272 Mich App 470, 473; 726 NW2d 746 (2006).

In a criminal case, the prosecution is required to prove each element of the charged crime beyond a reasonable doubt. *People v Hartwick*, 498 Mich 192, 216; 870 NW2d 37 (2015). This ensures a presumption of innocence in favor of the accused. *Id*. If the burden is placed on the defendant to negate a specific element of a crime, it "would clearly run afoul of this axiomatic, elementary, and undoubted principle of law." *Id*.

Defendant contends that the trial court shifted the burden of proof to him when the trial court stated "no one ever had an explanation for that gun, that's the problem." A review of the

record, however, reveals that the trial court weighed all the evidence and simply found the testimony of the police officers to be more credible than that of the defense witness.

When the trial court gave its findings, the trial court stated, in relevant part:

On Count 1, weapons firearms possession by a felon the People have met their burden of guilty based on, unfortunately on the revoked HYTA. It's a very unfortunate circumstance under how that HYTA was revoked, but nonetheless that's how it stands.

Count 2, weapons carrying concealed the People have met their burden, guilty on Count 2, weapons carrying concealed. Basically, you know, they met their burden. A person shall not carry a pistol concealed on or about his or her person, whether concealed or otherwise without a license to carry the pistol as provided by the law and the license, shall not carry the pistol in a place . . . or manner inconsistent with any restrictions about this license. Clearly here the Defendant did not have a license to carry a firearm.

Count 3, weapons felony firearm, the, the attempted felony is the felon in possession. Whether I agree with that or not I'm obligated to find him guilty of that charge.

Fourth, weapons ammunition possession by felon, the, the testimony was and the, the admissions, the – excuse me, the evidence admitted was the gun itself, the Ruger and the ammunition.

* * *

The Court will find that the testimony of the officers were [sic] credible in that they had a reason to stop the Defendant, that he did not stop, based on the city ordinance that he did not stop, that he proceeded into a home.

There is some other testimony about whether or not that home belonged to somebody but the Court is convinced that even by the Defendant's own testimony that it did not, that, and that the Defendant then surrendered that weapon to, I believe it's Officer Peugh.

And the Defense's witness, I did give some credibility to it in terms of what, . . . as to what happened in terms of the K-9 unit possibly being called out and other inconsistencies. However, no one ever had an explanation for that gun, that's the problem. There was not an explanation for the gun. The gun was presented. It was the Ruger with, with, in working order with the ammunition. I don't, didn't have an explanation and therefore I had to find beyond a reasonable doubt that that, that weapon was in the possession of Mr. Henry.

Thus, the trial court weighed the credibility of the officers' testimony against the conflicting testimony of the defense witness, and ultimately accepted the testimony of the officers that the gun was found in defendant's possession. In doing so, the trial court did not

-4-

improperly shift the burden of proof; rather, the trial court found the prosecution's witnesses to be more credible than the defense witness. We defer to the trial court in its determination of the credibility of witnesses and the weight of the evidence, MCR 2.613(C); *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008), and will not resolve credibility issues anew on appeal. *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). Accordingly, the trial court did not impermissibly shift the burden of proof to defendant.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next contends that he received ineffective assistance of counsel at trial because defense counsel neither objected to nor moved to suppress defendant's statement that he did not possess a license to carry the weapon on the basis that the statement was the result of an alleged *Miranda*[2] violation. We disagree.

To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or an evidentiary hearing in the trial court. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Where, as here, the defendant has failed to raise this claim before the trial court, our review is limited to error apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

Both the federal and the state constitutions guarantee that no person shall be compelled to testify against himself or herself. US Const, Am V; Const 1963, art 1, § 17. To protect against compelled self-incrimination, custodial interrogation must be preceded by advice to the accused in the form of what are commonly referred to as "Miranda" warnings. *People v Cortez (On Remand)*, 299 Mich App 679, 691; 832 NW2d 1 (2013). In this case, defendant argues that his trial counsel should have objected to the officers' testimony that, when they caught and detained defendant, they asked him if he had a permit to carry the Ruger and defendant replied that he did not. Defendant argues that this statement was inadmissible because it was obtained without a *Miranda* warning, and that defense counsel's failure to object to the admission of the statement amounted to ineffective assistance.

Generally, to demonstrate ineffective assistance of counsel, the defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and that (2) but for counsel's errors, there is a reasonable probability that the outcome of the proceedings would have been different. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014). We presume that counsel has provided effective assistance and the burden upon the defendant to prove otherwise is a heavy one. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Decisions regarding whether to raise objections are presumed to be matters of trial strategy. *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). To establish ineffective assistance of counsel specifically because defense counsel failed to move to suppress a custodial statement made prior to a *Miranda* warning, the defendant must show that he or she would have prevailed on the issue. *People v Comella*, 296 Mich App 643, 652-653; 823 NW2d 138 (2012).

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

We note that the trial court's finding in this case that defendant was in possession of the gun was not based upon defendant's statement that he did not have a permit for the gun. Indeed, the trial court did not even reference that statement in articulating its findings and conclusions. Rather, the trial court based the finding that defendant was in possession of the gun upon the officer's testimony that the gun was in defendant's possession when he searched defendant. Given that the trial court relied upon an independent basis to support its findings and conclusions, defendant was not prejudiced by defense counsel's failure to object to the admission of defendant's statement. *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003). Accordingly, defendant has failed to show that he would have prevailed on the merits of his claim had it been raised before the trial court; thus, there is no error apparent on the record to justify defendant's unpreserved ineffective assistance of counsel claim. See *id.*

### III. NEWLY DISCOVERED EVIDENCE

In his supplemental brief, defendant contends that he is entitled to a new trial on the basis of newly discovered evidence in the form of a Detroit Police Department K-9 Unit activity log. We disagree.

To preserve an issue based on newly discovered evidence, the defendant is required to move for a new trial before the trial court. *People v Darden*, 230 Mich App 597, 605-606; 585 NW2d 27 (1998). Because defendant did not do so in this case, our review of this unpreserved issue is limited to plain error affecting substantial rights. See, e.g., *People v Cox*, 268 Mich App 440, 450; 709 NW2d 152 (2005).

To warrant a new trial on the basis of newly discovered evidence, a defendant must show that: "(1) the evidence itself, not merely its materiality, was newly discovered; (2) the newly discovered evidence was not cumulative; (3) the party could not, using reasonable diligence, have discovered and produced the evidence at trial; and (4) the new evidence makes a different result probable on retrial." *People v Cress*, 468 Mich 678, 692; 664 NW2d 174 (2003) (quotation marks and citation omitted). The defendant bears the burden of satisfying each part of this test. *People v Rao*, 491 Mich 271, 279; 815 NW2d 105 (2012).

"Historically, Michigan courts have been reluctant to grant new trials on the basis of newly discovered evidence." *People v Grissom*, 492 Mich 296, 312; 821 NW2d 50 (2012). This reluctance stems from the parties' obligation to secure all relevant evidence for trial and "prepare for trial with the full understanding that, absent unusual circumstances, the trial will be the one and only opportunity to present their case." *Rao*, 491 Mich at 280. In this case, defendant has failed to show that the evidence of the K-9 unit activity log[3] was newly discovered. "[E]vidence is not newly discovered if the defendant or defense counsel was aware of the evidence at the time of trial," even if the evidence were unavailable at the time of trial. *Id.* at 281-282. Defense witness Calvin testified that a K-9 unit was called to the scene, and defense counsel at trial questioned the officers about the K-9 unit and discussed the presence of the K-9 unit at the scene

---

[3] The K-9 unit activity log indicates that the K-9 unit was called to the Northlawn address on the date in question and conducted a search for narcotics from 7:30 p.m. until 8:45 p.m.

during his closing argument. Because defense counsel was aware of the potential presence of the K-9 unit at the scene, the K-9 unit activity log is not "newly discovered." See *id*. at 281. Likewise, defendant has not demonstrated that he or his defense counsel could not have discovered or produced the K-9 unit activity log at trial using reasonable diligence.

Defendant also is unable to show that this evidence would make a different result probable on retrial. At trial, the trial court specifically stated that it gave some credibility to Calvin's testimony that a K-9 unit had been called to the scene, but nonetheless was persuaded by the other evidence supporting a finding that defendant had been in possession of the gun and the ammunition. Thus, the trial court had already given credence to the defense theory that the K-9 unit had been present but found that evidence insufficient to affect the finding that defendant was in possession of the gun and the ammunition. The record of the presence of a K-9 unit at the location was therefore immaterial to the outcome of the trial. Defendant, therefore, has failed to show plain error affecting his substantial rights.

## IV. *BRADY V MARYLAND*

In his supplemental brief, defendant also contends that the prosecution's failure to disclose the K-9 unit activity log before trial violated his due process rights under *Brady*[4], and thus, he is entitled to a new trial. We disagree.

To preserve an issue for appellate review on the basis of the prosecution's suppression of evidence, a defendant must make a motion for a new trial or for relief from judgment in the trial court. *Cox*, 268 Mich App at 448. Because defendant did not move for a new trial or for relief from judgment in the trial court or raise the issue of a *Brady* violation at any time in the trial court, the issue is unpreserved. See *id*. Our review, therefore, is limited to plain error affecting defendant's substantial rights. *Id*.

The prosecution violates a defendant's due process rights when it fails to disclose exculpatory and material evidence in its possession, regardless of whether the defendant requests the evidence. *People v Jackson*, 292 Mich App 583, 590-591; 808 NW2d 541 (2011). To establish a *Brady* violation, the defendant must demonstrate: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). Suppressed evidence may be considered favorable to a defendant if it could be exculpatory or impeaching. See *id*. at 150. With respect to materiality, "a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. (quotation marks and citation omitted).

Here, there is no basis in the record for finding that the prosecution was obligated to disclose the K-9 unit activity log because it was not material and was only tangentially favorable to defendant. Because the K-9 unit activity log confirms Calvin's recollection that the K-9 unit was called to the scene of the arrest, contrary to the testimony of the officers, it is arguable that

---

[4] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

the record was favorable to defendant in that it could have been used for impeachment.  But the trial court in this case stated, even absent the K-9 unit activity log, that it gave credibility to Calvin's testimony regarding the presence of the K-9 unit and other inconsistencies in the testimony.  The trial court found, however, that despite the inconsistencies the remaining evidence supported a finding that defendant was in possession of the gun and the ammunition.  Thus, the K-9 unit activity log was immaterial, and as such, the prosecution was not required to disclose evidence of the log.  See *Jackson*, 292 Mich App at 590-591.  Defendant therefore has failed to establish an error that affected the outcome of the lower court proceedings.

Affirmed.


/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens

-8-