# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

HERMAN RAMIK KERSEY,

        Defendant-Appellant.

UNPUBLISHED
March 29, 2016

No. 324674
Wayne Circuit Court
LC No. 14-004826-FC

Before: RONAYNE KRAUSE, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, conspiracy to commit armed robbery, MCL 750.157a, assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, conspiracy to commit AWIGBH, MCL 750.157a, carrying a dangerous weapon with unlawful intent, MCL 750.226, carrying a concealed weapon (CCW), MCL 750.227, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f. Defendant was sentenced as a second habitual offender, MCL 769.10, to 16 to 30 years' imprisonment for the armed robbery conviction, 16 to 30 years' imprisonment for the conspiracy to commit armed robbery conviction, 2 to 10 years' imprisonment for the AWIGBH conviction, 2 to 10 years' imprisonment for the conspiracy to commit AWIGBH conviction, one to five years' imprisonment for the CCW conviction, one to five years' imprisonment for the carrying a dangerous weapon with unlawful intent conviction, one to five years' imprisonment for the felon-in-possession conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

Defendant first claims that the evidence was insufficient to prove his guilt beyond a reasonable doubt of the conspiracy charges. Specifically, defendant argues that he was merely present at the scene of the incident and that, because the meeting was by chance, there was not enough time for defendant and his codefendant to conspire. We disagree.

We review de novo a challenge to the sufficiency of the evidence supporting a conviction. *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id.*

-1-

The evidence was sufficient to satisfy the elements of the crimes. The elements of armed robbery are:

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).]

The elements of AWIGBH are " '(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder.' " *People v Russell*, 297 Mich App 707, 721; 825 NW2d 623 (2012) (citation omitted). "Intent to do great bodily harm is intent to do serious injury of an aggravated nature." *Id*.

"A criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). The crime of conspiracy requires (1) the intent to combine with others, and (2) the intent to accomplish an illegal objective. *People v Mass*, 464 Mich 615, 629; 628 NW2d 540 (2001). The gist of the conspiracy is the unlawful agreement, and the crime is complete with the agreement. *People v Justice (After Remand)*, 454 Mich 334, 345-346; 562 NW2d 652 (1997). "The specific intent to combine, including knowledge of that intent, must be shared by two or more individuals because 'there can be no conspiracy without a combination of two or more.' " *Id*. at 346, quoting *People v Blume*, 443 Mich 476, 485; 505 NW2d 843 (1993). Often conspiracy is proven by circumstantial evidence and reasonable inferences. *Justice (After Remand)*, 454 Mich at 347-348. "For intent to exist, the defendant must know of the conspiracy, must know of the objective of the conspiracy, and must intend to participate cooperatively to further that objective." *Blume*, 443 Mich at 485.

In the present case, examining the evidence in a light most favorable to the prosecution, the evidence was sufficient to prove beyond a reasonable doubt the elements of armed robbery, assault with intent to commit great bodily harm, and conspiracy to commit these crimes. The evidence presented at trial was that defendant shot the victim, Anthony Lamar, in the back as he was running away from a car in which defendant was the passenger. Since Lamar had gotten only five to eight steps away from the car before he was shot, it is reasonable to assume that defendant knew the bullet was likely to cause at least great bodily harm. Before this, the sequence of events between defendant, codefendant Malik Cyrus, and Lamar showed the conspiracy and specific intent element of each crime. According to Lamar, he and friend David Wilder were walking in the street, and Lamar approached the car driven by Cyrus. Lamar knew Cyrus from school and had seen defendant, known as "Meko," previously around town. As Lamar looked into the car, he saw defendant in the passenger seat with four to six baggies of marijuana in his lap. Cyrus said it was for sale. Lamar also saw a "rello," or cigarello, used to roll joints, on defendant's lap.

Lamar testified that after Cyrus indicated the marijuana was for sale, Lamar said he was interested in buying some. He reached into his pocket and pulled out a rolled up wad of about $120 to $130. As he went to pick out a $10 bill, which was the price of the marijuana, Cyrus reached over and snatched all of the money out of Lamar's hand. Then Cyrus began to drive off with Lamar hanging onto the car. Not believing what had happened, Lamar said something to the effect of, "Straight up, it's like this?" and Cyrus said, "Yeah, n****, I'm cut like that," meaning, "It is what it is." Then Cyrus stopped the car and said, "[G]et the f*** on." Defendant pulled out a gun from his jacket, laid it in his lap, and said, "My man said get the f*** on. I got the mag," referring to the gun. Lamar then reached over, grabbed the money back from Cyrus, and started to run away. He heard Cyrus say, "Man bust that n****," and then five to eight steps later he heard a gunshot and was hit. Lamar had not seen Cyrus with a gun; only defendant had had a weapon, and a shell casing was later found in the street near where the car had been. The bullet hit Lamar in the back and exited through his chest.

The above scenario showed that Cyrus and defendant conspired to rob Lamar of his money and to assault him when he tried to take the money back. The words uttered by defendant ("My man said get the f*** on. I got the mag") and Cyrus ("Bust that n****") showed an agreement to rob Lamar, make sure he left, and then shoot him to regain the money when he snatched it back. Although the sequence took only a short time (an estimated three to four minutes from start to finish), there was sufficient evidence to show an agreement to rob Lamar and to do what was necessary to retain or recapture the proceeds, even if it meant seriously injuring or even killing Lamar. Defendant's arguments of "mere presence" are not convincing in the face of his words and deeds. His displaying and mentioning a weapon, agreeing with Cyrus's instructions that Lamar should leave after his money was taken, and then shooting Lamar in the back in response to Cyrus's direction to "bust" him, all show agreement and intent to commit the crimes together. We therefore reject defendant's arguments and find sufficient evidence to prove the elements of armed robbery, assault with intent to commit great bodily harm, and conspiracy to commit both crimes. See *Lane*, 308 Mich App at 57.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel and his right to present a defense by his attorney's failure to request a separate trial, at which his codefendant would have testified, and that his attorney rendered ineffective assistance when he failed to challenge Wilder's in-court identification of defendant. We disagree.

A defendant preserves an ineffective assistance of counsel claim by filing a motion for a new trial or for a *Ginther*[1] hearing in the trial court. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). In this case, defendant did not move for a new trial or a *Ginther* hearing in the trial court. Therefore, the issue is unpreserved. See *id*. The issue is, therefore, reviewed for errors apparent on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A claim of ineffective assistance of counsel is a mixed question of law and fact."

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

*Id.* We review the trial court's factual findings, if there are any, for clear error, and the legal issues involved in the ineffective assistance of counsel claim de novo. *Id.*

Defendant argues that the failure to request separate trials in order for Cyrus to testify deprived him of his right to present a defense and constituted ineffective assistance of counsel. To prevail on a claim of ineffective assistance, the defendant must show that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for the deficient performance, the outcome of the trial would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). A decision not to call a witness is presumed to be a matter of trial strategy, and " '[t]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense.' " *Russell*, 297 Mich App at 716 (citation omitted). A substantial defense is a defense that could have affected the outcome of the trial. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015).

A criminal defendant has the right to " 'a meaningful opportunity to present a complete defense.' " *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008) (citation omitted). The right to present a defense, however, is not absolute, and a state has the power to enact its own criminal trial rules and procedures. *Id.* at 250. The rules must not be "arbitrary or disproportionate to the purposes they are designed to serve." *Id.* (citations and quotation marks omitted).

Defendant argues that, while a joint defendant is generally not entitled to a separate trial, the court must grant severance when the codefendants are antagonistic to each other. MCL 6.121(C) provides that the court must sever the trial of codefendants on a defendant's motion for severance when there is a showing that severance is necessary to avoid prejudice to the defendant's substantial rights. " 'Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice.' " *People v Bosca*, 310 Mich App 1, 43-44; 871 NW2d 307 (2015) (citation omitted), lv held in abeyance 872 NW2d 492 (2015). "There is no absolute right to separate trials, and in fact, '[a] strong policy favors joint trials in the interest of justice, judicial economy, and administration.' " *Id.* at 44 (citation omitted; alteration in original). The court should grant severance when the defenses are antagonistic. *Id.* "A defense is deemed antagonistic when it appears that a codefendant may testify to exculpate himself and to incriminate the defendant." *Id.* (citations and quotation marks omitted). The defenses must also be mutually exclusive or irreconcilable with one another. *Id.* "In other words, the 'tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other.' " *Id.* (citation omitted).

Here, defendant was not denied his right to present a defense, and trial counsel's failure to request a separate trial did not constitute deficient performance. Defendant argues in his brief on appeal that Cyrus would have testified that defendant had nothing to do with the crimes. Thus, there is no indication that separate trials were required since, according to defendant, Cyrus's testimony would have exculpated defendant. Defendant fails to show that Cyrus's defense was irreconcilable with defendant's defense or that there was such tension between the two defenses that a jury could not have believed both defenses. See *Bosca,* 310 Mich App at 44.

-4-

Therefore, defendant was not denied his right to present a defense, and defense counsel did not render ineffective assistance for failing to request a separate trial. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Defendant argues that his attorney's decision not to call the codefendant was not trial strategy. However, the record contradicts this claim. Trial counsel questioned defendant on the record, and defendant acknowledged that counsel advised him that, based on his professional opinion, it would not be wise to call Cyrus as a witness. Defendant stated that he agreed with this decision. Thus, the record shows that the decision not to call Cyrus was, in fact, an exercise of trial strategy. We first note that defendant waived the issue when he stated that he was informed of, and expressed agreement with, his trial counsel's strategy. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (noting that waiver is an intentional relinquishment or an abandonment of a known right and explaining that a person who waives his rights cannot seek appellate review of a depravation of the rights). However, even assuming that the issue was not waived, the evidence presented at trial indicates that the decision not to call Cyrus was sound trial strategy considering that Cyrus would be subject to cross-examination concerning what happened during the incident and defendant's involvement in the incident. See *Trakhtenberg*, 493 Mich at 51. Additionally, defendant has not provided proof outside of his own affidavit establishing that Cyrus would have testified that defendant lacked any involvement in the crime. See *People v Hoag*, 460 Mich 1; 594 NW2d 57 (1999) (noting that a defendant has the burden to establish the factual predicate of his ineffective assistance of counsel claim). Most fundamentally, Cyrus was charged with the same crimes and accordingly could not be forced to testify at all, regardless of what he told defendant, and whether or not the trials were separate or joint. See *People v Wyngaard*, 462 Mich 659, 671-672; 614 NW2d 143 (2000). Thus, the failure to call Cyrus as a witness did not constitute ineffective assistance of counsel. See *Russell*, 297 Mich App at 716.

Defendant also maintains that his attorney was ineffective for failing to object to the in-court identification of defendant by Wilder. As defendant notes, when an impermissibly suggestive identification procedure is used, "evidence concerning the identification is inadmissible at trial unless an independent basis for in-court identification can be established 'that is untainted by the suggestive pretrial procedure.' " *People v Williams*, 244 Mich App 533, 542-543; 624 NW2d 575 (2001) (citation omitted). A photographic identification procedure violates due process when it is "so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998). When a witness is shown only one person or photo, the temptation arises to presume the person pictured is the criminal. *Id.* "[E]xhibition of a single photograph 'is one of the most suggestive photographic identification procedures that can be used.' " *Id.* (citation omitted). However, whether it constitutes a violation of due process depends on the totality of the circumstances in the case. *People v Woolfolk*, 304 Mich App 450, 457; 848 NW2d 169 (2014), aff'd 497 Mich 23 (2014).

Numerous factors must be considered in determining whether an independent basis exists for admission of an in-court identification. *Gray*, 457 Mich at 114-115. The factors include:

(1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant. [*People v Davis*, 241 Mich App 697, 702-703; 617 NW2d 381 (2000).]

In *Woolfolk*, the witness was shown a single photograph to confirm the identity of a person that the witness had already identified through a nickname as the defendant. *Woolfolk*, 304 Mich App at 457-458. The witness claimed that he knew the defendant and had grown up with him. *Id*. at 458. This Court held that the use of a single photograph under the circumstances in the case did not create a substantial likelihood of misidentification and that the fact that the witness knew the defendant and identified him by name before seeing the photograph of the defendant formed an independent basis for the in-court identification. *Id*. Thus, this Court pointed out that an objection by the defense counsel would have been meritless. *Id*.

Similarly, in this case, the circumstances did not create a substantial likelihood of misidentification, and the facts established an independent basis for Wilder's identification. Wilder testified he had seen defendant around town, knew him as "Meko," and had given the police the name "Meko" along with Cyrus's name. The nickname "Meko" matched that given by Lamar. Wilder testified that he told the police that a man named Meko was involved in the incident. When shown defendant's photo by police, Wilder wrote "Meko" on the back of the photo, and then signed and dated it April 7, 2014. Wilder told Officer Donahue that he spoke to defendant during the robbery. It was morning and there was no evidence that the light was inadequate to observe defendant's face. Wilder was just outside the car with Lamar when they approached the car to talk with the occupants. Thus, Wilder would have had a good opportunity to observe defendant. Wilder did not identify anyone else as the second robber, and his identification corroborated that of Lamar, who had also identified defendant as the passenger in the car. The trial court characterized Lamar's testimony as "far more important" than Wilder's for purposes of defendant's motion for a directed verdict. Given the above facts and circumstances, there was not a substantial likelihood of misidentification and there was an independent basis for the in-court identification. It follows that counsel did not commit an outcome-determinative error in failing to object or move to suppress Wilder's identification.[2] See *Woolfolk*, 304 Mich App at 457-458.

---

[2] Defendant also points out that defense counsel did not question Lamar regarding his failure to identify anyone in a photographic lineup. However, defendant does not raise an argument with regard to this point. Therefore, to the extent that defendant attempts to raise any issue of ineffective assistance on this point, he has abandoned his argument on appeal. See *People v Schumacher*, 276 Mich App 165, 178; 740 NW2d 534 (2007) ("An appellant may not merely

## III. PROSECUTORIAL MISCONDUCT

Finally, defendant claims that he was denied a fair trial by the prosecutor's statements during closing arguments that defendant was a convicted felon and that Lamar was not chained to the witness chair and forced to testify, and that the trial court, therefore, erred in denying his motion for a mistrial. We disagree.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant's attorney objected during the prosecutor's closing argument with regard to the remark concerning the fact that defendant was a convicted felon, but he did not raise a contemporaneous objection during the prosecutor's closing argument when the prosecutor remarked that Lamar was not "chained to the chair" and forced to testify. Therefore, the issue is preserved with regard to the first alleged instance of prosecutorial misconduct, but not with regard to the second alleged instance of prosecutorial misconduct. Defendant preserved the issue regarding the denial of his motion for a mistrial by moving for a mistrial in the trial court. See *People v Alter*, 255 Mich App 194, 205; 659 NW2d 667 (2003).

Preserved claims of prosecutorial misconduct are reviewed de novo to decide if the defendant was denied a fair and impartial trial. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting the defendant's substantial rights. *Bennett*, 290 Mich App at 475. We review a trial court's decision to deny a motion for mistrial for an abuse of discretion. *Lane*, 308 Mich App at 60. "The trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*.

The prosecutor may argue the evidence and reasonable inferences from the evidence. *People v Comella*, 296 Mich App 643, 654; 823 NW2d 138 (2012). The prosecution need not limit its argument to the blandest of terms. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). Prosecutors are afforded great latitude in arguments and conduct at trial. *Unger*, 278 Mich App at 236. The arguments are examined on a case-by-case basis and evaluated in context of the entire record. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

The prosecutor argued during closing arguments that defendant was a convicted felon and then repeated this statement after defense counsel objected and the court gave an instruction limiting the prosecutor's argument to the felon-in-possession charge. The prosecutor then argued, referring to Lamar, "You didn't see him chained to that chair there and being forced to testify . . . ." Defendant argues that, in fact, the court had taken pains to have Lamar, who was in custody on a probation violation, seated before the jury arrived and stay seated until after the jury left. Defendant argues that the court committed error requiring reversal in denying his counsel's motion for a mistrial resulting from the prosecutor's prejudicial remarks. Defendant claims that

---

announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment [of an issue] with little or no citation of supporting authority.") (citations and quotation marks omitted; alteration in original).

these remarks incorrectly implied that Lamar arrived of his own accord and could leave whenever he wished.

We conclude that defendant was not denied a fair trial by the prosecutor's allegedly objectionable remarks. The "convicted felon" statements were not improper because the attorneys had stipulated that defendant was convicted of a felony. This was an element of the felon-in-possession charge. The court instructed the jury that a stipulation existed that defendant was convicted of a specified felony, and the prosecutor's comment was limited to this count. The court also instructed the jury that the attorneys' statements and arguments were not evidence, and that evidence came only from witnesses and exhibits. It is presumed that the jury followed the court's instructions. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Therefore, the remark did not deprive defendant of a fair trial.

The prosecutor's remark that Lamar was not tied to the chair indicated that no one was forcing Lamar to testify against defendant. The prosecutor's point was that, as the victim of a very serious crime, Lamar would naturally wish to see the assailants brought to justice. The jury was not being deceived because the court had allowed the defense to bring out that Lamar had been in custody. Previously, the prosecution had made a motion in limine to prevent both defense counsels from bringing up that Lamar was in custody, apparently on a probation violation. Defendant's trial attorney stated that he did not plan on getting into where Lamar was housed. The court allowed the defense to reveal that Lamar's second statement to the police was made while he was in custody, but not why. When the prosecutor later said in rebuttal closing argument that Lamar was not tied to the chair, this was in response to arguments in defense counsels' closings, and it did not deny defendant a fair and impartial trial. Furthermore, even assuming that the prosecutor's statement was improper, the jury instruction that the lawyers' statements are not evidence cured the error. Therefore, the prosecutor's statement did not amount to plain error affecting defendant's substantial rights.

For the same reasons, the court did not err in denying defendant's motion for a mistrial. "The trial court should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *Lane*, 308 Mich App at 60 (citations and quotation marks omitted). The trial court may consider whether the prosecution emphasized the information or intentionally presented the information to the jury. *Id*. In this case, as discussed above, the prosecutor's comments did not deny defendant of a fair trial, and any prejudice was slight. Considering all of the evidence in the case, the prosecutor's remarks did not deny defendant a fair trial or require the grant of a new trial.

Affirmed.

/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens