# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT LEROY HOUGHTALING,

Defendant-Appellant.

UNPUBLISHED
June 20, 2017

No. 330547
Huron Circuit Court
LC No. 15-305923-FH

Before: STEPHENS, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Defendant was convicted following a jury trial of second-degree home invasion, MCL 750.110a(3), and safe breaking, MCL 750.531. The trial court sentenced defendant as a habitual offender, fourth offense, MCL 769.12, to concurrent prison terms of 11 to 40 years for each conviction. Defendant appeals as of right. We affirm.

## I. BACKGROUND FACTS

Defendant's convictions arise from the home invasion and safe breaking at the Bad Axe home of ninety-year-old Dr. Edward Steinhardt, who had hired defendant's girlfriend, Jenna Clark, to assist him in the home with personal needs and chores, and to clean the house and retrieve the mail when he spent winters in Florida. On Thursday, February 12, 2015, Clark steam cleaned the carpet in Dr. Steinhardt's home. That same day, defendant entered the home to retrieve the steam cleaner and put it in Clark's car. Sometime between 5:00 p.m. on February 13, and 9:30 a.m. on February 14, someone entered Dr. Steinhardt's home by breaking the northwest entry door, went into the basement, retrieved the key to a safe from a drawer in a desk next to the safe, opened the safe with the key, and took more than $8,000 in cash and other items from the safe. The key to the safe, as well as other items with defendant's and Clark's names on them, were found in a garbage bag in a dumpster at the apartment complex where defendant and Clark lived.

## I. ANALYSIS

## A. SUFFICIENCY OF THE EVIDENCE

-1-

Defendant argues that there was insufficient evidence adduced to support a finding that he was the person who broke into Steinhardt's home. We review de novo a defendant's challenge to the sufficiency of evidence supporting conviction. *People v Henderson*, 306 Mich App 1, 8-9; 854 NW2d 234 (2014).

In reviewing the sufficiency of the evidence, this Court must view the evidence—whether direct or circumstantial—in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended on other grounds 441 Mich 1201 (1992). All conflicts in the evidence are resolved in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Defendant argues that there was insufficient evidence to support a finding that he was the individual who broke into Steinhardt's home and stole items from the safe because alibi testimony showed he was somewhere else for most of February 13, 2015. Identity is an element of every criminal offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Identity may be proved by circumstantial evidence and any associated reasonable inferences. *People v Nelson*, 234 Mich App 454, 459; 594 NW2d 114 (1999).

Despite the lack of direct evidence linking defendant to the crimes, there was ample circumstantial evidence that established that defendant was the person who broke into Steinhardt's safe and stole items from the safe. The prosecution presented evidence regarding defendant's motive to steal and his knowledge of the likely contents of the safe. There was also testimony as to defendant's opportunity to enter the home to commit the theft and defendant's influx of cash immediately after the home invasion.

The motive testimony came from Clark's cousin, Krissy Logsdon, who testified that she heard defendant and Clark bickering about money a few weeks before Valentine's Day. Defendant's sister, Ashley Houghtaling, provided testimony regarding defendant's knowledge of the safe and its probable contents when she testified that in the week leading up to Valentine's Day, defendant told her that the man that Clark worked for must be rich because his house was big and he had "expensive things." It is undisputed that defendant had been at the home on February 12 to assist Clark in returning a rented carpet cleaning machine. It was after that visit defendant also mentioned that the man had a safe, that there was a key in a desk in the home, and that "it would be funny to go back there and rob him because he was so rich."

The home invasion and safe breaking occurred sometime after approximately 5:00 p.m. on February 13 and before approximately 9:30 a.m. on February 14. Ashley testified that defendant and Clark were gone from the apartment for approximately 45 minutes between 8:00 and 9:00 p.m. on February 13. The key to Steinhardt's safe was found in a trash bag in the dumpster outside the apartment complex where defendant and Ashley lived.

Further, defendant was observed by Ashley's friend Dwayne Lively in defendant's bedroom with a stack of money sometime between 9:00 and 9:30 p.m. on February 13. Evidence

was also presented that defendant paid for all expenses for himself and Clark for a weekend getaway, including gas, two hotel rooms, meals, gambling, shopping, an engagement ring, and something valued at $2,000 that defendant indicated was flushed down a toilet. And defendant's parole officer testified that defendant had $1,100 in his pocket when he was arrested on a parole violation on February 18.

Additionally, Joseph Gardyszewski testified that defendant mentioned breaking into a home in Bad Axe that had "a large sum of money" inside when the two were cellmates.

Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have concluded beyond a reasonable doubt that defendant committed the home invasion and broke into the safe. Although defendant presented testimony of his whereabouts on February 13, there was a period of 45 minutes unaccounted for during which the crime could have been committed. Also, defendant had expressed concerns about a lack of money in the week before Valentine's Day, yet he spent a considerable amount of money over the Valentine's Day weekend, and still had over $1,000 in cash in his pocket when arrested on a parole violation. The jury had the opportunity to observe the witnesses and piece together the events testified to having occurred on February 13 and 14. From the evidence presented, it was reasonable for the jury to conclude that defendant knew where the safe was and that it was opened by a key.

## B. ADMISSION OF TEXT MESSAGES

Defendant argues that the trial court erred by admitting two text messages that were sent by defendant to an unknown phone number on February 14 because the text messages were highly prejudicial.[1] We review a trial court's decision to admit evidence for an abuse of discretion. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). An abuse of discretion exists if the trial court's decision "falls outside the principled range of outcomes." *People v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008).

The prosecutor moved to admit two text messages originating from defendant's cell phone to an unknown person at 5:40 p.m. and 5:58 p.m. on February 14 after defendant testified on direct examination that his comments during a recorded jailhouse conversation with Clark about flushing something valued at $2,000 down the toilet did not refer to events occurring on the Valentine's Day 2015 weekend, but to a weekend in the middle of January. The first text message stated, "Yeah, shit went bad last night, I'm still here, that bitch flushed my shit." The second text message stated, "That bitch flushed all my shit, homey, check on some loud and the burner, too, I'm here at the room, I'll come see you in a while." The prosecutor argued that defendant was referring in the February 14 text messages to "flushing" stuff that weekend, and therefore she had the right to cross-examine him about the inconsistency. Defendant asserted

---

[1] Defendant cites generally the law applicable to other-acts evidence, but he offers no argument or analysis, and fails to apply the law to the facts with respect to MRE 404. Any claim that the evidence was not admissible under MRE 404 is abandoned. *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position.").

that the text messages clearly referred to drugs and, therefore, the evidence was highly prejudicial because defendant was not charged with any drug offenses. The trial court found that the text messages, which did not refer specifically to drugs, could be used for impeachment purposes based upon just asking the question of whether the statements were provided.

Generally, relevant evidence is admissible. MRE 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence may be excluded, however, if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. Unfair prejudice exists where there is a danger that marginally probative evidence will be given undue weight by the jury or it would be inequitable to allow the proponent of the evidence to use it. *People v Mills*, 450 Mich 61, 75-76; 537 NW2d 909, mod on other grounds 450 Mich 1212 (1995).

Here, the impeachment evidence was more than marginally probative because it tended to call into question defendant's testimony that he did not flush something valued at $2,000 the weekend of Valentine's Day 2015 and to establish the timeframe during which defendant had excess money at his disposal. The $2000 was important because it was theorized to have been part of the sudden influx of cash that defendant had contemporaneous to the home invasion. Further, the jury had already heard evidence that defendant had flushed something and, therefore, the impact of the text messages, which did not specifically mention drugs, was minimal. Any prejudicial effect did not substantially outweigh the probative value of the impeachment evidence.

## C.  OFFENSE VARIABLE 19

Defendant argues that the trial court erred by scoring 10 points for offense variable (OV) 19). However, defense counsel and defendant both stated on the record at sentencing that they had no objections to the scoring of the guidelines. This issue is waived. *People v Carter*, 462 Mich 206, 219; 612 NW2d 144 (2000).

## II.  STANDARD 4 BRIEF

## A.  PROSECUTORIAL MISCONDUCT

"[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Questions of prosecutorial misconduct are decided on a case-by-case basis, and the prosecutor's conduct must be evaluated in context. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014).

Defendant argues that the prosecutor engaged in misconduct by introducing evidence that he was on parole when Steinhardt's home and safe were broken into. To preserve the issue of prosecutorial misconduct, a defendant must contemporaneously object to the prosecutor's statements, see *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004), and request a "curative instruction," *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627

(2010). He did not do so. Accordingly, our review is for plain error affecting defendant's substantial rights. *Thomas*, 260 Mich App at 453-454.

Evidence of a prior conviction is generally regarded as being prejudicial to the accused because there is a danger that the jury "will misuse prior conviction evidence by focusing on the defendant's general bad character . . . ." *People v Allen*, 429 Mich 558, 569; 420 NW2d 499 (1988). However, reference to a defendant's parole status is not improper when it is relevant for something other than propensity, see *People v Coffey*, 153 Mich App 311, 313; 395 NW2d 250 (1986), overruled in part on other grounds in *People v Hernandez-Garcia*, 477 Mich 1039; 728 NW2d 406 (2007), such as "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident," *Dobek*, 274 Mich App at 85.

A prosecutor's good-faith effort to introduce evidence does not constitute misconduct. *Id.* at 70-71. Here, evidence regarding the amount of cash that defendant spent and had available to him on Valentine's Day weekend despite his lack of steady employment could be used to link defendant to the break-in. The prosecutor introduced testimony by defendant's parole officer, Cary Walker, that defendant did not have any verified employment and that he had reported he was trying to find odd jobs, such as working "under someone else" to do tattoo work. Walker also testified that defendant did not report as required on February 17, 2015, and that when he did report after the weekend, he had $1,110 cash in his wallet. The basis of Walker's relationship with defendant explained how he had knowledge of defendant's financial situation and by what authority he could come to know how much money defendant had on him that day. The prosecutor offered the evidence for a proper purpose, and therefore defendant has not established plain error.

Defendant also argues that the prosecutor engaged in misconduct by failing to advise her witnesses not to mention defendant's criminal history. The gravamen of defendant's argument appears to be that the statements were inadmissible under MRE 403 and 404. However, the prosecutor did not "offer" the challenged evidence. As defendant acknowledges, the witnesses' references to defendant's parole and felony status and prior drug use were unresponsive, volunteered answers to the prosecutor's proper questions. Further, the challenged testimony is not so egregious that any prejudicial effect could not have been alleviated by a curative and limiting instruction with regard to the challenged statements. See *People v Mahone*, 294 Mich App 208, 213; 816 NW2d 436 (2011) ("[U]nresponsive answers . . . are generally not considered prejudicial errors unless egregious or not amenable to a curative instruction.").

Defendant next argues that the prosecutor engaged in misconduct when she introduced in violation of MRE 1002 copies of two letters written by defendant while in jail to Ashley. Defendant objected to admission of the letters, but the objection was premised on the view that Ashley could not positively identify defendant's handwriting. Defendant did not raise MRE 1002. Thus, because the objection was on a different ground than raised on appeal, the issue is not properly preserved. *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001), citing MRE 103(a)(1). Again, our review is for plain error affecting substantial rights. *Thomas*, 260 Mich App at 453-454.

"To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules [or by statute]." MRE 1002. MRE 1003 provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

Here, the actual content of the letters was not at issue. Because the best evidence rule only applies when the "contents of a writing are [at] issue," *People v Alexander*, 112 Mich App 74, 76; 314 NW2d 801 (1981), defendant has failed to establish plain error affecting his substantial rights.

Defendant also argues that he was prejudiced by the prosecutor's eliciting of testimony from Clark that defendant asked her to dispose of a purple Crown Royal bag because "it is more than probable that one or more of the jurors knew that drugs were being referred to." He also argues that defense counsel was precluded from questioning Clark about the testimony in order to avoid eliciting prejudicial information involving drug paraphernalia. However, the contents of the purple Crown Royal bag were never mentioned at trial, and neither the prosecutor nor Clark mentioned drug paraphernalia with respect to the bag. Additionally, there is nothing in the record to suggest that any juror had the requisite knowledge upon which this argument is based. Defendant has failed to show plain error affecting his substantial rights. *Thomas*, 260 Mich App at 453-454.

Additionally, defendant argues the prosecutor mischaracterized Krissy Logsdon's testimony when the prosecutor argued, "Krissy Logsdon couldn't answer a strait [sic] question twice in a row." However, Logsdon's testimony was full of discrepancies regarding the timeline of events. Thus, the prosecutor's characterization of the testimony was a reasonable comment on the witness's credibility.

Defendant also argues that the prosecutor made statements unsupported by the evidence in discussing the existence of alleged "bank envelopes" in defendant's possession. Specifically, he finds fault with the following comment: "Who had a thousand dollars laid out on the bed in bank envelopes?"

Lively testified that when he walked into defendant's bedroom, he saw a "big stack of money" on the bed, as well as "envelopes." Although Lively did not specifically testify that the money was in bank envelopes, the prosecutor's statement that the money was laid out on the bed in bank envelopes was understandable in light of the fact that Lively testified that he saw a long black leather bank envelope and white envelopes on the bed where the money was located.

Next, defendant argues that the prosecutor made comments unsupported by the evidence when she implied that defendant had Ashley's phone during the time that the prosecutor asserted the offenses occurred. Ashley testified that she gave her phone to defendant to use because defendant's phone "died like almost a few minutes after we were on the way" to get money from someone he called Wink. She could not recall when defendant returned her phone to her, and testified that she never tried to check it or use it for anything. She assumed that she would have been the one carrying on a conversation on February 13 from 7:16 p.m. to 7:42 p.m. when a text message that purportedly began with "it's Ashley, please believe me," was sent to her boyfriend,

JP. Given this record, the prosecutor made a reasonable inference based on the evidence that defendant was in possession of Ashley's phone when he left the apartment with Clark. *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

Lastly, defendant argues that the prosecutor committed misconduct during her closing argument by shifting the burden of proof when she "insinuated to the jury that the amount of money [defendant] spent over Valentine's weekend 'didn't add up with' the amount of money [defendant] claimed he had beforehand."

A prosecutor may not imply that the defendant is required to prove something or to provide a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof. *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). However, a prosecutor's proper commentary on the weaknesses of a defense theory does not shift the burden of proof. *Id.* at 464-465. When a defendant testifies at trial or advances an alternate exculpatory theory of the case, the prosecutor's comments on the validity of the alternate theory do not "shift the burden of proving innocence to the defendant." *People v Fields*, 450 Mich 94, 115; 538 NW2d 356 (1995).

Fairly read, the prosecutor's remarks did not assert that defendant had to prove anything. Instead, the prosecutor's recitation of defendant's expenditures over Valentine's Day weekend, together with the money he had on his person a few days after the weekend, directly responded to the defense theory of the case, and did not improperly shift the burden of proof. The same is true of the prosecutor's comment that the circumstantial evidence showed that defendant took the key to the safe and later discarded it in the trash. "[A] prosecutor is entitled to argue the evidence and reasonable inferences from the evidence." *People v Comella*, 296 Mich App 643, 654; 823 NW2d 138 (2012).

Defendant has waived any claim that he was denied a fair trial by the trial court's failure to instruct the jury on the use of other-acts evidence in accordance with M CJI 4.11. Defense counsel affirmatively approved the trial court's instructions on the record. See *Carter*, 462 Mich at 219.

Defendant argues that he was denied the effective assistance of counsel at trial as a result of counsel's failure to object with respect to each of the alleged errors raised in his Standard 4 brief. To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing professional norms, and (2) that there is a reasonable probability that but for counsel's deficient performance the result of the proceedings would have been different. *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defendant argues that trial counsel failed to file a pretrial motion in limine to exclude defendant's parole status and prior criminal record or, alternatively, that counsel should have requested a limiting instruction under M Crim JI 4.11. As previously discussed, evidence regarding defendant's parole status and prior criminal record came in through unresponsive

answers to proper questioning by the prosecutor. Further, the trial court did not plainly err by failing to sua sponte instruct on M Crim JI 4.11.

As for the rest of the criticisms of trial counsel's performance, defendant offers no analysis. These challenges are therefore abandoned. See *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").

Lastly, defendant argues that the cumulative effect of all of the purported errors in this case denied him the right to due process and an impartial jury. As he has failed to establish that any errors occurred, "there can be no cumulative effect of errors meriting reversal." *Dobek,* 274 Mich App at 106.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray